**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| George Kessel International Inc., et al., | No. CV-07-323-PHX-SMM |
| Plaintiffs, | **MEMORANDUM OF DECISION AND ORDER** |
| v. | |
| Classic Wholesales, Inc., et al., | |
| Defendants. | |

Pending before the Court are Defendants' motion to dismiss for lack of jurisdiction (Dkt. 19-22) and Plaintiffs' responses thereto. Defendants assert that the Court lacks personal jurisdiction over them, and seek dismissal on that basis. See Fed. R. Civ. P. 12(b)(2).[1] Plaintiffs assert that jurisdiction is proper, and in the alternative, request leave to conduct jurisdictional discovery (Dkt. 26-30). Having reviewed the parties' arguments and submissions, the Court issues this memorandum of decision and order.

## BACKGROUND

On February 12, 2007, Plaintiff initiated this suit with a Complaint alleging causes of action for patent and trademark infringement. Plaintiff subsequently filed a First

---

[1] Defendants frame their motion to dismiss as "pursuant to Federal Rules of Civil Procedure, Rule 12(b)(2),(3). Rule 12(b)(2) seeks dismissal for lack of personal jurisdiction, and 12(b)(3) for improper venue. As Defendants' memoranda only address the personal jurisdiction issue, the Court treats the motion as bottomed on lack of personal jurisdiction.

Amended Complaint (FAC) on March 9, 2007.  The dispute arises from two patents owned by Plaintiffs.

Plaintiffs promote, offer for sale, and sell digital scales for weighing small items such as jewelry, letters, and foods.  In December 2006, Plaintiffs acquired rights to a patent ("the '798 patent") for a new scale, marketed as the Jennings Digital Scale or "JScale."  Defendants' scales include a digital pocket scale promoted and sold as the XJ-4K803, which Plaintiffs allege contains substantially identical designs as those covered by the '798 patent.  Plaintiffs further allege that Defendants featured the XJ-4K803 on the cover of their 2006 catalog, and that Defendants have sold the XJ-4K803 in the United States and within the State of Arizona.

Two other digital scales also are alleged to infringe the '798 patent.  Defendants X.J. Group, Ltd. (X.J. Group) manufacture digital scales under the names XP-150 and XP-250.  Plaintiff alleges that X.J. Group sells those scales to an American subsidiary, X.J. Group (USA), Inc. (X.J. (USA)), which then sells the scales to Defendant American Weigh Scales, Inc. (American Weigh).  American Weigh then distributes the scales through Defendant Classic Wholesales, Inc. (Classic Wholesales).  Plaintiffs further allege that all Defendants have directly or indirectly offered for sale or sold the XP-150 and -250 within the United States and the State of Arizona.

Plaintiffs own the trademark "CONVERTIBLE" for use on another digital scale, and have used that mark since March 2002.  Plaintiffs allege that Defendant Classic Wholesales has promoted and sold a digital scale under the CONVERTIBLE mark, causing confusion amongst consumers of those products.

Defendants moved to dismiss the action for lack of personal jurisdiction and submitted affidavits in support of their motion.[2]  Plaintiffs responded that the Court has

---

[2] Defendants did not file the supporting affidavits until May 30, 2007—the deadline for Plaintiffs' responsive memorandum.  Plaintiffs called to the Court's attention that the delayed filing deprived Plaintiffs of an opportunity to respond to the affidavits (Dkt. 35).  Accordingly, the Court will treat Plaintiffs' supplementary response as a sur-reply and will

personal jurisdiction over each of the Defendants because each of them have sufficient minimum contacts with the forum state. In the alternative, Plaintiffs request that the Court grant leave to conduct limited jurisdictional discovery. Plaintiffs assert two bases for finding minimum contacts: the "stream of commerce" theory of minimum contacts, and the "interactivity" of Defendants' Web sites. Defendants maintain that neither basis is sufficient to subject them to personal jurisdiction in this District.

## STANDARD OF REVIEW

A federal court may exercise personal jurisdiction over a non-resident defendant if jurisdiction is proper under the state's long-arm statute and if the exercise of jurisdiction is consistent with the due process requirements of the constitution. See, e.g., Fireman's Fund Ins. Co. v. Nat'l Bank of Co-ops., 103 F.3d 888, 893 (9th Cir. 1996). Arizona's long-arm statute permits jurisdiction over a non-resident defendant to the limits of the United States Constitution. See Davis v. Metro Prod., Inc., 885 F.2d 515, 520 (9th Cir. 1989). The statutory and constitutional considerations "therefore merge into a single due process test." Fireman's Fund, 103 F.3d at 893.

The Due Process Clause of the Constitution requires that a defendant have minimum contacts with the forum state so that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. See Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). A defendant who has substantial or continuous and systematic contacts with a state can be subject to the general personal jurisdiction of that state. See, e.g., Fields v. Sedgwick Assoc. Risks, Ltd., 796 F.2d 299, 301 (9th Cir. 1986).

A state may also exert specific personal jurisdiction over a defendant in certain circumstances. Specific jurisdiction is acceptable under the Due Process Clause if: (1) the defendant has done some act by which he purposely availed himself of the privileges of acting in that state and so invoked the benefits and protections of its laws; (2) the claim

---

consider the arguments contained therein.

- 3 -

arises out of the Defendants' forum-related activities; and (3) the exercise of personal jurisdiction would be reasonable. See, e.g., Fireman's Fund, 103 F.3d at 894. A defendant can waive the requirement of personal jurisdiction by failing to timely object. Fed. R. Civ. P. 12(h).

A district court deciding a 12(b)(2) motion to dismiss without first holding an evidentiary hearing must determine whether the plaintiff presents a prima facie showing of jurisdictional facts. Omeluk v. Langsten Slip & Batbyggeri A/S, 52 F.3d 267, 268 (9th Cir. 1995). Plaintiff "need only demonstrate facts that if true would support jurisdiction over the defendant." Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd., 328 F.3d 1122, 1129 (9th Cir. 2003). A plaintiff's version of the facts is taken as true unless directly contravened, and conflicts between the facts contained in the parties' affidavits must be resolved in plaintiff's favor. Id.

## DISCUSSION[3]

Plaintiff asserts that personal jurisdiction exists in this case because Defendants placed the infringing items in the stream of commerce, and the items were ultimately sold to customers in the state of Arizona. (Pls.' Resp. ¶¶ 14-15; Pls.' Sur-reply ¶¶ 8-9.) Plaintiff also asserts that Defendants' Web sites are of a nature that support this Court's exercise of jurisdiction. (Pls.' Resp. ¶¶ 16-18.) These jurisdictional bases will be addressed as to each Defendant.

**A. X.J. Group, Ltd.**

X.J. Group is a Chinese corporation with headquarters and principal place of business located in Yantian, Shenzhen, China. (FAC ¶ 2; David Lee Aff. ¶ 4.) X.J.

---

[3] As a preliminary matter, Plaintiffs suggest that Defendants are in default for failure to answer or file a responsive motion within the proper time period. (Pls.' Resp. 2 n.1.) Without commenting on the merits of Plaintiffs' contention, the Court notes that Plaintiffs' assertion does not conform to the proper procedure for seeking default. See Fed. R. Civ. P. 55.

Group manufactures electronic scales that Plaintiffs allege infringe on the '798 patent. Plaintiffs argue that specific jurisdiction is proper in this district because X.J. Group injected the scales into the stream of commerce by selling the scales to its subsidiary located in the United States, and that those scales were ultimately sold in this district. (See FAC ¶¶ 16-18.) Plaintiffs' responsive memorandum alleges that X.J. Group knew the likely destination of the product. (Pls.' Resp. ¶ 15.)

X.J. Group does not maintain any offices, stores, outlets, distributors, warehouses, or employees in the state of Arizona, nor does it have any customers, distributors, jobbers, wholesalers, or resellers in Arizona. (David Lee Aff. ¶¶ 6, 8.) Therefore, X.J. Group asserts, the Court lacks specific personal jurisdiction because X.J. Group has not purposefully directed its activities at residents of Arizona. (Defs.' Reply 3-4.)

### 1. Stream of Commerce

District courts may properly assert personal jurisdiction over parties that deliver products into the stream of commerce with the expectation that local consumers will purchase them. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297-98 (1980). However, the unilateral activity of a third-party that brings products into the forum state does not constitute "purposeful availment" by an out of state retailer or distributor. Id. at 297.

The Supreme Court's most recent treatment of personal jurisdiction under the stream of commerce resulted in two plurality opinions. See Asahi Metal Industry Co., Ltd. v. Superior Court, 480 U.S. 102 (1987). According to the more restrictive view articulated by Justice O'Connor, "the placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State." Asahi, 480 U.S. at 112 (O'Connor, J.). The Due Process Clause requires some "additional conduct" purposefully directed at the forum state. Id. Justice Brennan's more permissive view finds the Due Process Clause to require only "aware[ness] that the final product is being marketed in the forum State." Id. at 117 (Brennan, J.).

- 5 -

The Arizona Supreme Court has not determined whether the Arizona long-arm statute extends to the permissive view, or stops at the restrictive view. See A. Uberti & C. v. Leonardo, 892 P.2d 1354, 1359 (Ariz. 1995) (declining to "enter the debate," as defendant's conduct satisfied the more restrictive view). Although not binding precedent on this Court,[4] the Federal Circuit has also not chosen a position. See Commissariat A L'Energie Atomique v. Chi Mei Optoelectronics Corp., 395 F.3d 1315, 1322 (Fed. Cir. 2005). The Ninth Circuit appears to have adopted Justice O'Connor's restrictive view of "purposeful direction" under the Due Process Clause. See Holland America Line Inc. v. Wartsila North America, Inc., 485 F.3d 450, 459 (9th Cir. 2007) ("The placement of a product into the stream of commerce, without more, is not an act purposefully directed toward a forum state.").

Having invoked the Court's jurisdiction Plaintiffs bear the burden of proving the necessary jurisdictional facts, including the existence of sufficient minimum contacts. See Rio Properties, Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1019 (9th Cir. 2002). Plaintiffs' uncontroverted allegations fall in between the permissive view and the restrictive view of the stream of commerce. Plaintiffs allege that X.J. Group manufactured the infringing products (FAC ¶¶ 14-16) and indirectly sold those products in Arizona through a chain of distribution that included X.J. (USA), American Weigh, and Classic Wholesales. (FAC ¶ 17.) Plaintiffs further allege that all Defendants worked "in concert," knowing the "likely destination" of the infringing products (Pls.' Resp. ¶

---

[4] Plaintiffs believe the Court is required to apply the law of the Federal Circuit in determining whether the exercise of personal jurisdiction is appropriate, and cite two Federal Circuit cases to support their contention. (Pls.' Resp. 4.) Those cases stand for the proposition that the Federal Circuit can develop and follow its own law in deciding jurisdictional issues "intimately related to substantive patent law" and that it is not bound to apply the law of the circuit in which the case arose. See, e.g., Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558, 1564 (Fed. Cir. 1994). But there is a difference between the Federal Circuit "ow[ing] no special deference to regional circuit law", id. at 1565, and Federal Circuit precedent binding this Court. As Plaintiffs provide no support for the latter contention, the Court will follow Ninth Circuit precedent.

15), and provide invoices for infringing products sold in Arizona. (Charles Bachmann Decl., Pls.' Resp. Exs. 2, 3.)

X.J. Group counters that it maintains no offices, stores, outlets, distributors, warehouses, or employees *within Arizona*, nor does it have customers, jobbers, wholesalers or resellers *in Arizona*. (David Lee Aff. ¶¶ 6, 8 (emphasis added).) Therefore, X.J. Group argues, the Court lacks *general* jurisdiction over it. (Defs.' Mot. 2-3-4.) X.J. Group's argument regarding specific jurisdiction is limited to whether its Web site provides sufficient contacts with Arizona. (Defs.' Mot. 4-6.) Thus X.J. Group does not directly contradict Plaintiffs' stream of commerce argument for specific jurisdiction. Plaintiffs' allegations, if believed, support a finding that X.J. Group was "aware" that the infringing products were marketed in Arizona. Asahi, 480 U.S. at 117 (Brennan, J.).

However, Plaintiffs fail to allege "additional conduct" on the part of X.J. Group sufficient to meet the restrictive stream of commerce test. Under that view, awareness that the product will flow into the forum state "does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum state. Id. at 112 (O'Connor, J.). Examples of additional conduct include "designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." Id. Plaintiffs do not allege that any of the other Defendants have agreed to serve as X.J. Group's sales agent in Arizona. Plaintiffs do allege that X.J. Group's Web site supports personal jurisdiction in this District.

2. X.J. Group, Ltd. Web site

Whether personal jurisdiction can be constitutionally exercised on the basis of a Web site is "directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414, 419 (9th Cir. 1997) (quoting Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1124

- 7 -

(W.D. Pa. 1997)). Courts look to the level of interactivity and commercial nature of the exchange that occurs on a Web site to determine if sufficient contacts exist to warrant the exercise of jurisdiction. Id. at 418. An internet advertisement alone is insufficient to subject a party to jurisdiction in another state; there must be "something more" to demonstrate that the defendant directed activity toward the forum state. Id.

Plaintiffs allege that X.J. Group's Web site allows a user to receive price quotes for products by filling out a form on the site, includes a picture and description of the infringing product, and is accessible in Arizona. (Pls.' Resp. ¶¶ 16-17.) Plaintiffs do not allege that X.J. Group has sold any products to Arizona residents over the Internet. The mere fact that X.J. Group's Web site is accessible from local computers has no bearing on whether it is subject to jurisdiction. Accessing the site requires affirmative conduct on the part of the user; it does not show any affirmative conduct by X.J. Group directed at Arizona.

Plaintiffs' allegations establish only that X.J. Group maintains a "passive" Web site accessible to Arizona residents. A passive site is insufficient to support specific jurisdiction under Cybersell because it does not involve conduct directed at the forum state. Accordingly, the allegations do not rise to the level of "additional conduct" directed at Arizona as required by the restrictive stream of commerce test for specific jurisdiction. Therefore the Court lacks personal jurisdiction over X.J. Group. Plaintiffs' request for jurisdictional discovery is discussed below.

**B. X.J. Group (USA), Inc.**

X.J. (USA) is a California corporation with headquarters and principal place of business in California. The allegations in the Complaint in large part treat X.J. Group and X.J. (USA) as the same entity. (See, e.g., FAC ¶ 16; Pls.' Resp. ¶ 3.) Plaintiffs allege that X.J. (USA) is a domestic subsidiary of X.J. Group, responsible for distribution in the United States. (Pls.' Resp. ¶ 3.)

As Plaintiffs' allegations and X.J. (USA)'s responses mirror those of X.J. Group,

- 8 -

Ltd., the Court finds the same result regarding personal jurisdiction. Plaintiffs' allegations set forth a prima facie case that X.J. (USA) is aware that its products are being marketed in Arizona, but do not set forth any "additional conduct" directed toward Arizona. X.J. (USA) does not operate a Web page independent of X.J. Group, Ltd. (Defs.' Reply 3.) Therefore X.J. (USA) lacks the necessary contacts with Arizona—through the stream of commerce and the Internet—to establish personal jurisdiction. Plaintiffs' request for jurisdictional discovery is discussed below.

### C. American Weigh Scales, Inc.

American Weigh Scales, Inc. ("American Weigh") is a South Carolina corporation with headquarters and principal place of business in South Carolina. (FAC ¶ 5; Lee Vantine Aff. ¶ 3.) Plaintiffs allege that American Weigh resells infringing products it purchases from X.J. (USA). (Pls.' Resp. ¶ 4.) Although American Weigh does not maintain any offices, stores, outlets, distributors, warehouses, or employees in Arizona (Lee Vantine Aff. ¶ 5), it has a small number of customers in Arizona and maintains a Web site through which visitors can conduct commercial business. (Id. ¶ 6-7.) American Weigh offers its products through catalogs distributed to Arizona residents, and sells products to Arizona residents through the Internet and "other distribution channels." (Pls.' Resp. ¶ 4.) Plaintiffs have submitted invoices of sale for the XP-150 scale and the "CONVERTIBLE" scale made from American Weigh to Arizona residents. (Pls.' Resp. Exs. 2, 3.)

Plaintiffs allege sufficient contacts between American Weigh and Arizona. American Weigh is aware that its products are marketed in Arizona, having taken orders and shipped products into the forum state. Cf. McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223-24 (1957) (finding a single contract formed sufficient contacts for due process when contract had substantial connection to the forum state). The mailing of catalogs into Arizona, as well as the maintenance of an "interactive" Web site, satisfies the "additional conduct" requirement of the restrictive stream of commerce view. Asahi, 480 U.S. at 112

- 9 -

(advertising in the forum state is an example of additional conduct). Therefore American Weigh is subject to personal jurisdiction in Arizona.

### D. Classic Wholesales

Classic Wholesales is a Georgia corporation with its principal place of business in Georgia. (FAC ¶ 4; Defs.' Mot. 3.) Classic Wholesales is allegedly the distributor for American Weigh. (FAC ¶ 17.) Classic Wholesales allegedly offered for sale and sold infringing scales, including a scale under the "CONVERTIBLE" mark. (FAC ¶¶ 17, 21.) Plaintiffs do not directly allege that Classic Wholesales sold infringing scales in Arizona, but construed in a light most favorable to Plaintiffs, Plaintiffs allege that Classic Wholesales distributed the scales American Weigh sold in Arizona. Further, Plaintiffs allege that Classic Wholesale sent catalogs to Arizona promoting infringing products. (Charles Bachmann Aff. ¶5, Resp. Ex. 4.)

Classic Wholesales' Web site displays the catalog, along with pictures and descriptions of the infringing products. (Resp. ¶ 17.) The Web site offers limited interactivity to registered users, but in order to register a visitor must contact Classic Wholesales' via telephone. (Reply 5.) Classic Wholesales' Web site provides a link to American Weigh's Web site, but visitors cannot order products directly from Classic Wholesales' Web site. (Id.; Gary Sanhi Aff. ¶ 6.) .

As the alleged distributor of the infringing products delivered to Arizona, Classic Wholesales has direct contacts with the forum state. Classic Wholesales would therefore be "aware" that its products are marketed in Arizona. Like American Weigh, Classic Wholesales allegedly advertised in Arizona by mailing catalogs to Arizona residents. Although the low interactivity of Classic Wholesales' Web site factors against personal jurisdiction, Plaintiffs have made a prima facie showing of jurisdictional facts as against Classic Wholesales.

### E. Reasonableness Factors

In addition to having sufficient minimum contacts, the exercise of jurisdiction

must "comport with fair play and substantial justice." <u>Burger King Corp v. Rudzewicz</u>, 471 U.S. 462, 477-78 (1985). Reasonableness depends on a balancing of several factors, none of which is dispositive standing alone. Those factors are: (1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. <u>Core-Vent Corp. v. Nobel Industries AB</u>, 11 F.3d 1482, 1487-88 (9th Cir. 1993).

In this case, the factors balance in favor of reasonable exercise of jurisdiction. Pursuing the case in Arizona presents no threat to the sovereignty of South Carolina and Georgia. Arizona has a significant interest in protecting its corporations and businesses from trademark and patent infringement. As Defendants are residents of two different states, the case can be most efficiently resolved where both are subject to jurisdiction, as they are in Arizona. It may be inconvenient for Defendants to litigate in Arizona, but Defendants have not shown that litigating in Arizona would be so gravely difficult as to put them at a severe disadvantage. <u>See</u> <u>Burger King</u>, 471 U.S. at 478. Although Defendants' level of purposeful availment is relatively modest, jurisdiction in this matter comports with the reasonableness requirements of due process.

### F. Jurisdictional Discovery

In their Response, Plaintiffs request leave to conduct limited jurisdictional discovery in the event the Court finds personal jurisdiction lacking. A court may allow discovery to aid in determining whether it has personal jurisdiction. <u>Wells Fargo & Co. v. Wells Fargo Exp. Co.</u>, 556 F.2d 406, 430 n.24 (9th Cir. 1977). The decision whether to grant jurisdictional discovery is generally left to the discretion of the trial court. <u>Id.</u> "Where a plaintiff's claim of personal jurisdiction appears to be both attenuated and

- 11 -

based on bare allegations in the face of specific denials made by the defendants, the Court need not permit even limited discovery." Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1160 (9th Cir. 2006) (citations omitted) (finding jurisdictional discovery unjustified where foreign defendant did not expressly aim his conduct at forum state and maintained a passive Web site).

The Court finds jurisdictional discovery inappropriate under the facts presented in this case. Plaintiffs' claim of personal jurisdiction over Defendants X.J. Group, Ltd. and X.J. (USA) is attenuated, as it is based on those Defendants "indirectly" committed acts of trademark infringement in Arizona by selling products to Defendants American Weigh and Classic Wholesales. (See FAC ¶¶16, 17; Pls.' Response ¶ 15; Pls.' Sur-reply ¶ 3.) Defendants X.J. Group, Ltd and X.J. (USA) specifically deny that they maintain any offices, stores, outlets, distributors, warehouses, or employees in Arizona (David Lee Aff. ¶ 6), and deny having any customers, distributors, jobbers, wholesalers, or resellers in Arizona. (Id. ¶ 8.) Plaintiffs do not contend otherwise. (See Charles Bachmann Decl. ¶ 3.) Therefore the Court will deny Plaintiffs' request for jurisdictional discovery, noting that Plaintiffs may seek leave to amend their complaint to allege sufficient contacts between Defendants X.J. Group, Ltd. and X.J. (USA)'s and Arizona, should such information become known during the course of litigation. Fed. R. Civ. P. 15(a).

## CONCLUSION

Plaintiffs have made a prima facie showing of jurisdictional facts as to Defendants American Weigh and Classic Wholesales. The exercise of personal jurisdiction over those Defendants would be reasonable and comport with fair play and substantial justice. Plaintiffs' allegations as to Defendants X.J. Group, Ltd. and X.J. (USA) fail to set forth a prima facie case for personal jurisdiction, nor do the claims of personal jurisdiction as to those Defendants justify jurisdictional discovery. Accordingly,

//

//

**IT IS HEREBY ORDERED** denying Defendants' Motion to Dismiss for lack of personal jurisdiction as to Defendants American Weigh Scales, Inc. and Classic Wholesales, Inc. (Dkts. 19, 20.)

**IT IS FURTHER ORDERED** granting Defendants' Motion to Dismiss for lack of personal jurisdiction as to Defendants X.J. Group, Ltd. and X.J. Group (USA), Inc. (Dkts. 21, 22.)

**IT IS FURTHER ORDERED** denying Plaintiffs' motion for leave to take jurisdictional discovery.  (Dkt. 27.)

DATED this 30th day of October, 2007.

Stephen M. McNamee
United States District Judge